## UNITED STATES v. WALSH.

### No. 22687.

United States District Court
D. Louisiana.

Aug. 25, 1949.

J. Skelly Wright, United States Attorney and John N. McKay, Assistant United States Attorney, New Orleans, La., for the United States.

No counsel appeared on behalf of defendant.

BORAH, District Judge.

Challenging the legality of his detention and claiming that the sentence imposed by this court is open to collateral attack and should be vacated and set aside, Federal prisoner Eugene Francis Walsh has pursuant to 28 U.S.C.A. § 2255 moved the court for such relief.

Notice of the within application was served upon the United States Attorney, a prompt hearing was had thereon, and the court now makes it findings of fact and conclusions of law with respect thereto.

### Findings of Fact

1. On September 3, 1947, Eugene Francis Walsh was living on the third floor of a rooming house located at 1321 Carondelet Street in the City of New Orleans.

2. The aforementioned rooming house is a four story structure and is operated by Mrs. Anna Newman and her father, the owner.

3. Richards, a Federal Narcotic Agent, had prior to the date in question received information from two informers that Walsh was selling narcotics at Thalia and Magazine Streets as well as at 1321 Carondelet Street.

4. On September 3, 1947, Richards in company with State Patrolmen O'Rourke and Calamari was on a routine patrol. Around noon Richards saw one Legnon, a known drug user, observed his movements for several blocks and saw him leave Thalia Street and enter an alleyway which is an entrance to 1321 Carondelet Street.

5. Richards told the officers that Legnon was undoubtedly going to Walsh's room whom he knew as "Nigger Gene", so they deployed on opposite sides of the alley and waited until he came out.

6. When Legnon came out of the alleyway Calamari and Richards placed him under arrest, whereupon Legnon exclaimed "You don't want me, you want 'Nigger Gene'."

7. Legnon was searched and turned over to Calamari for safe-keeping. Thereupon O'Rourke and Richards proceeded into the alleyway and spoke to Mrs. Newman, one of the operators of the rooming house.

8. After identifying themselves O'Rourke and Richards told Mrs. Newman that they were looking for somebody upstairs; they described Walsh and asked if she would let them in, which she did.

9. Mrs. Newman proceeded to the third floor accompanied by O'Rourke and Richards. She knocked on Walsh's door and told him as the officers had told her to say that there was some kind of inspector there for the lights.

10. When Walsh opened the door he was told that he was under arrest. Officer O'Rourke grabbed him and went into his pockets and found thirty-two capsules of heroin and one hundred and one grains of powdered heroin in a glassine paper bag. A further search was made of the room but no other narcotics were found.

11. On October 8, 1947, Walsh personally appeared before the court and having been advised of his right to have the assistance of counsel, declared that he did not desire the assistance of counsel and expressly and in writing waived his right thereto.

12. Being advised of the nature of the charge and of his rights, Walsh did on the day aforementioned waive in open court prosecution by indictment and consent in writing that the proceeding be by information.

13. Thereupon the Assistant United States Attorney filed an information charging Walsh with having purchased from some person or persons unknown the one hundred forty-five grains of heroin hydrochloride which was taken from his person under the circumstances hereinabove set forth.

14. Walsh pleaded guilty to the offense charged in the information in complete ignorance of his constitutional rights under the 4th and 5th Amendments, and the court in pronouncing judgment ordered that he be committed to the custody of the Attorney General or his authorized representative for imprisonment for the period of four years. When sentence was pronounced the court had no knowledge of the facts above recited in respect to the search and seizure.

## Conclusions of Law

1. The court concludes that the seizure of the heroin hydrochloride by the enforcement officers was a violation of Walsh's constitutional rights under the 4th and 5th Amendments.

2. That the aforementioned action on the part of the enforcement officers was such an infringement of the constitutional rights of Walsh as to render the judgment vulnerable to collateral attack.

3. The judgment entered herein on October 8, 1947 should be recalled, vacated and set aside, and that the prisoner, Eugene Francis Walsh, should be discharged.